51 CCPA
**Application of Paul WIEST and Fritz Esper.**
**Patent Appeal No. 7153.**

United States Court of Customs and Patent Appeals.
March 26, 1964.

Michael S. Striker, New York City, Harold D. Steinberg, for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1, 3, 4, 5, 6, 8 and 9 [1] of appellants' application serial No. 783,145 filed December 29, 1958, for "Magnetic Material." No claim has been allowed.

Appellants' invention relates to an anisotropic magnetic material in the form of a sintered body which consists essentially of particles of a metal oxide having the composition recited in illustrative appealed claim 3:

"As an anisotropic magnetic material, a sintered body consisting essentially of particles of at least one metal oxide sintered to each other, said metal oxide corresponding to the formula $MO.6Fe_2O_3$, wherein M represents at least one metal selected from the group consisting of Ba, Sr and Pb, said sintered body having a density of up to 4.80 grams per cubic centimeter and an intrinsic coercive force of at least 3300 Oersted and said sintered particles having a size of up to 1 $\mu$."

Appellants' magnetic material is said to be capable of substantially retaining its magnetization even upon and after exposure to very low temperatures, i. e. the material is capable of withstanding exposure to a temperature of $-40°$ C with only a slight decrease of its magnetic flux or induction.

Appellants concede that their invention relates to an anisotropic magnetic material in the form of a sintered body which consists of particles of metal oxide having the composition recited in the appealed claims, which composition, per se, is old. However, appellants rely for patentability of the composition on a combination of three recited characteristic features:

1. A density of the sintered body of anisotropic magnetic material which will be up to 4.80 grams per cubic centimeter;

2. An intrinsic coercive force of at least 3300 Oersted; and

3. A size of the individual sintered particles which is up to one micron.

Appellants in their application state that it is preferred to grind the pre-sintered oxides, in preparing the magnetic material, to a fineness of at least one micron. Modifying agents or additives, such as $Fe_2O_3$, manganese, bismuth, $BaSO_4$, $B_2O_3$, $As_2O_3$, $Sb_2O_5$ and others are said to "facilitate in many cases the production of sintered anisotropic magnetic bodies which possess the essential characteristics according to the present invention, namely, a density not exceeding 4.80 grams per cubic centimeter and an intrinsic coercive force of at least 3300 Oersted." These essential characteristics, appellants state, "are primarily obtained by controlling and modifying the composition, and the pressure, grinding and sintering conditions during the production of the sintered magnetic body."

The references relied on by the examiner and the board are:

| | | |
|---|---|---|
| Gorter et al. | 2,762,778 | Sept. 11, 1956 |
| Sixtus | 3,001,943 | Sept. 26, 1961 |
| Philips (British) | 747,737 | Apr. 11, 1956 |

---

[1]. Appellants in their brief withdrew their appeal as to claims 1 and 5.

The Gorter et al. patent relates to magnetically anisotropic permanent magnets and to methods of producing same. In one embodiment of their invention, the patentees employ material "which is in a finely-divided state, for example, particles less than $10\mu$ and preferably less than $5\mu$ and place the same in a sufficiently mobile condition so that the particles can be oriented by a magnetic field." In one example a material is obtained which has "a field strength of disappearance $I^HC$ of 3225 Oersteds, a $(BH)_{max}$ value of $0.99 \times 10^6$ and an 'apparent density' of 4.41."

The Sixtus patent relates to an improved heat treatment for increasing the coercive force and the maximum useable magnetic energy of permanent magnetic materials which consist of a combination of iron oxide and one or more metal oxides. The anisotropic magnetic materials in the Sixtus patent are said to be less susceptible to the demagnetizing influence of stray fields, shocks, and temperature changes. In the course of the patentee's process, slugs of a metal oxide are crushed and ground until the particles are of "a micron or so in greatest dimension."

The Philips patent relates to methods of manufacturing permanent magnets. It teaches that materials can be provided with magnetically anisotropic properties in various ways, "for example, by subjecting the material in the form of fine particles of a size smaller than $10\mu$, preferably smaller than $5\mu$, in a state in which the particles are sufficiently moving to permit magnetic orientation to the action of an external magnetic field having a field strength of more than 100 Oersted, preferably more than 700 Oersted, and by subsequently compressing the particles to form a coherent body the magnetic field preferably being maintained during compression."

The examiner rejected the appealed claims as unpatentable over Gorter et al. in view of Philips and Sixtus. He took the view that there is but one difference between appellants' claims and the subject matter disclosed by the references which difference, viz. that appellants' material has an intrinsic coercive force of at least 3300 Oersted while the highest intrinsic force shown by the references is 3225 Oersted, he regarded as insignificant. The board, in affirming the examiner, stated:

\* \* \* \* \* \*

"Example 8 of the Gorter et al. patent shows a material having a density of 4.41 and an intrinsic force of 3225 oersteds. As for the particle size, it is stated in the patent (column 2, lines 19 to 24) that the particles should be less than 10 $\mu$ and preferably less than $5\mu$.

"Further elucidation of the matter of particle size is found in the Sixtus patent, which suggests a particle size of one micron in maximum dimension. Sixtus does not assert that he is the originator of a material having a particle size of this dimension, and it may be assumed that particles of this size were previously known in the art, as in connection with the Gorter et al. material. It is noted that the discussion in Sixtus of particle size may be correlated with the other two patents cited because Sixtus refers to a single crystal dimension in the first paragraph of his Example I, just as Gorter et al. refer to single crystals in column 2, lines 40 to 42. Moreover, Philips emphasizes on page 2, lines 4 to 9, that fine particles be utilized in order to obtain a high intrinsic coercive force.

"With the indicated express teaching in the Sixtus patent regarding particle size, we consider it quite obvious to a person of ordinary skill in this art to make a magnetic material in accordance with the last sentence of Example 8 of Gorter et al. having a particle size up to $1\mu$.

"Appellants have not demonstrated that the difference between the coercive force of the Gorter et al. material (3225 oersteds) and appel-

lants' claimed lower limit of 3300 oersteds, a difference of less than 3%, is in any way significant. * * * "

Appellants argue that none of the references taken alone, nor the combination of the teachings of the references suggest the advisability or desirability of providing an anisotropic magnetic material which, in addition to the density of up to 4.80 grams and the sintered particle size of up to one micron will also have an intrinsic coercive force of at least 3300 Oersted. Appellants contend that the board relied on the last sentence of Example 8 of the Gorter et al. patent to support its position. That sentence reads:

' * * * A block obtained in the same manner, but not subjected to a first field treatment, had a remanence $B_r$ of 2020 Gauss and, a field strength of disappearance $I^HC$ of 3225 Oersteds, a $(BH)_{max}$ value of $0.99 \times 10^6$ and an 'apparent density' of 4.41.''

Appellants urge that since that material in Gorter et al. has not been subjected to a first field treatment, the material has not been made anisotropic, but is an isotropic material. Appellants further rely on an affidavit which they submitted "which shows that the combination of the three features is required in order to achieve the desired result [eliminating thermal instability], while materials having a somewhat larger particle size and an only slightly lesser intrinsic coercive force (still higher than that disclosed by the references) will show a magnetization loss of about 40%."

For reasons hereinafter stated, we are not persuaded by appellants' urgings that the particular material in the Gorter et al. patent referred to by the board is not a magnetically anisotropic material in some degree. Although that material has not been subjected to a first

magnetic field treatment, it appears that a binder solution of the material was placed in a molding die and subjected to a second magnetic field treatment with at least a portion of the binder solution being removed by heating to a temperature of 500° C. Blocks of this material were then passed through a furnace having an atmosphere of air at a temperature of 1280° C. The Philips patent teaches that a material may be transferred into a magnetically anisotropic condition by subjecting the material while in the form of fine particles in a state in which they are sufficiently moving to permit magnetic orientation, to the action of an external magnetic field having a field strength of more than 100 Oersted, and by subsequently compressing the particles to form a coherent body, the magnetic field preferably being maintained during compression. We think the conditions in the Philips patent are sufficiently analogous to the treatment in the Gorter et al. patent to indicate that the Gorter et al. Example 8 material in question will be anisotropic to some degree. A principle contention of appellants on this point appears to rest on a letter published in the Journal of Applied Physics, Vol. 23 (1952) page 1282, referred to for the first time in their brief. They contend that "in this letter, a $(BH)_{max}$ value of between 0.8 and $1.1 \times 10^6$ Gauss-Oersted is given for isotropic oxidic magnetic materials on the basis of $MO.6Fe_2O_3$, while the corresponding $(BH)_{max}$ value for an isotropic materials is indicated as up to $3.0 \times 10^6$." That letter, however, sets no minimum as to the $(BH)_{max}$ value for anisotropic material and the appealed claims do not recite a $(BH)_{max}$ value. Furthermore, the letter indicates that the "anisotropy of the remanence value $B_r \| / B_r \perp$ " for example, is a relative term, that value increasing "with increasing sintering temperature." [2]

2. Bozorth in "Ferromagnetism" (1951) states that "In a single crystal of iron (and of other substances) the magnetic properties depend on the direction in

which they are measured. Although some of these crystals are cubic and have some isotropic properties, such as their interaction with light, they are magnetically

Since we consider the Gorter et al. patent to show anisotropic magnetic material having a density within appellants' range and an intrinsic coercive force of 3225 Oersteds, which is a difference of less than 3% from appellants' claimed lower limit and a difference which the record has not shown to be significant, we think the issue here is simply whether it would be obvious to employ a particle size of up to one micron in preparing the Gorter et al. compositions.

Gorter et al. do not specify a particle size of up to one micron although they indicate the desirability of employing particles of preferably less than five microns in size. Sixtus, however, in preparing his anisotropic magnetic material shows that it is known in this art to employ particles of material of "a micron or so in greatest dimension." We believe that it would have been obvious to one of ordinary skill in the art to employ the conventional particle size set forth in the Sixtus patent in the Gorter et al. process especially since the two patents are from analogous art.

Appellants place heavy emphasis on the affidavit of record. There is nothing in the affidavit, however, to show that the material of Gorter et al. having an Oersted value of 3225 and a particle size preferably less than 5 microns does not have the characteristics of appellants' material. Although affiants state that tests and experiments referred to in the affidavit which compare materials of different particle size indicate that there appears to be a relationship between the particle size of the ground material and the intrinsic coercive force, it seems clear from the record that appellants' desired characteristics are not dependent solely on the particle size. Appellants in their specification have stated that the intrinsic coercive force and density value recited in the appealed claims "are primarily obtained by controlling and modifying the composition and the pressure, grinding and sintering condi-

tions during the production of the sintered magnetic body." Moreover, Sixtus not only teaches that the coercive force can be increased by heat treatment but that a heat treatment can also make such materials less susceptible to temperature changes.

For the reasons set forth above the decision of the board is affirmed.

Affirmed.

anisotropic in their response to magnetic fields of any considerable magnitude. Crystals of non-cubic symmetry are

anisotropic with respect to light and to magnetic fields of any magnitude."